1    [Submitting counsel on signature page]

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8    KEARSTEN WALDEN and ZACHARY       Case No.  4:24-CV-00903-JD
     WALDEN,

9            Plaintiffs,              **PLAINTIFFS' OPPOSITION TO
                                       DEFENDANTS' MOTIONS TO
10   v.                                DISMISS UNDER 12(B)(2) AND 12(B)(3)**

11   THE COOPER COMPANIES, INC.;
     COOPERSURGICAL, INC.; and DOES 1-
12   10, inclusive,

13            Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLS' OPP. TO DEFS' MOTIONS TO DISMISS
                                                     CASE NO. 4:24-CV-00903-JD

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

FACTS .............................................................................................................................. 2

    A.    Plaintiffs' Allegations ................................................................................ 2

    B.    Jurisdictional Facts Alleged in Plaintiffs' Complaint ............................ 3

    C.    Additional Jurisdictional Facts................................................................ 4

LEGAL STANDARD ........................................................................................................ 6

I.     Rule 12(b)(2) – Personal Jurisdiction ................................................................. 6

II.    Rule 12(b)(3) – Venue ......................................................................................... 7

ARGUMENT ..................................................................................................................... 7

I.     Plaintiffs Have Made A Prima Facie Showing of General Personal Jurisdiction
Over CooperSurgical................................................................................................ 8

II.    In the Alternative, Plaintiffs Are Entitled to Jurisdictional Discovery to Establish
Personal Jurisdiction ............................................................................................. 10

    A.    Discovery Can Establish General Jurisdiction Under An Alter Ego Theory ........ 11

    B.    Discovery Can Establish Traditional Specific Jurisdiction.................................. 12

    C.    Discovery Can Establish Specific Jurisdiction Under An Agency Theory........... 14

III.   Establishing Jurisdiction Will Resolve Venue .................................................... 15

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Aldrich v. Nat'l Collegiate Athletic Ass'n,*
484 F. Supp. 3d 779 (N.D. Cal. 2020) ................................................................... 14

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,*
94 F.3d 586 (9th Cir. 1996)..................................................................................... 11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
571 U.S. 49 (2013) ..................................................................................................... 7

*AutoRABIT Holding, Inc. v. Copado, Inc.,*
No. 23-CV-01247-JST, 2024 WL 24328 (N.D. Cal. Jan. 2, 2024) ......................... 9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
874 F.3d 1064 (9th Cir. 2017)................................................................................. 13

*Baires v. United States,*
No. C 09-5171 CRB, 2010 WL 3515749 (N.D. Cal. Sept. 8, 2010) ...................... 13

*BNSF Ry. Co. v. Tyrrell,*
581 U.S. 402 (2017) ............................................................................................ 8, 10

*In re Boon Glob. Ltd.,*
923 F.3d 643 (9th Cir. 2019)..................................................................................... 6

*Boschetto v. Hansing,*
539 F.3d 1011 (9th Cir. 2008)............................................................................. 6, 10

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.,*
582 U.S. 255 (2017) ................................................................................................... 7

*Caruth v. Int'l Psychoanalytical Ass'n,*
59 F.3d 126 (9th Cir. 1995)....................................................................................... 6

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ................................................................................. 6, 8, 10, 14

*Doe 1 v. AOL LLC,*
552 F.3d 1077 (9th Cir. 2009)................................................................................... 7

*eMag Sols., LLC v. Toda Kogyo Corp.,*
No. C 02-1611 PJH, 2006 WL 3783548 (N.D. Cal. Dec. 21, 2006) ...................... 10

*F.G. et al v. CooperSurgical Inc. et al,*
Case No. 4:24-cv-01261-JST (N.D. Cal.) .................................................................. 5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
592 U.S. 351 (2021)................................................................................................. 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915 (2011).............................................................................................. 7, 8

*Hernandez v. Mimi's Rock Corp.,*
632 F. Supp. 3d 1052 (N.D. Cal. 2022) ...........................................................*passim*

**TABLE OF AUTHORITIES**
(continued)

Page

*Huddleston v. John Christner Trucking, LLC*,
   No. 1:17-CV-00925-LJO-SAB, 2017 WL 4310348 (E.D. Cal. Sept. 28, 2017) ................... 13

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .......................................................................................... 6, 7, 8

*Knuttel v. Omaze, Inc.*,
   572 F. Supp. 3d 866 (N.D. Cal. 2021) ................................................................... 7

*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080 (9th Cir. 2003) ............................................................................. 10

*Lindblad v. Linde AG*,
   No. 23-CV-06179-JSC, 2024 WL 923773 (N.D. Cal. Mar. 4, 2024) ...................... 9

*LiveCareer Ltd v. Su Jia Techs. Ltd.*,
   No. 14-CV-03336-JST, 2015 WL 1448505 (N.D. Cal. Mar. 31, 2015) ................... 9

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
   22 F.4th 852 (9th Cir. 2022) ............................................................................... 13

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) .............................................................................. 9

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007) ............................................................................. 13

*MN Inv. Inc. v. Nguyen*,
   No. 22-CV-02814-LB, 2022 WL 3974263 (N.D. Cal. Aug. 31, 2022) ................... 10

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
   198 F.R.D. 670 (S.D. Cal. 2001) ......................................................................... 11

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .......................................................................... 8, 10

*Salesforce.com, Inc. v. GEA, Inc.*,
   462 F. Supp. 3d 1004 (N.D. Cal. 2020) ............................................................ 7, 15

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ................................................................................ 6

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) .............................................................................. 6

*United States v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009) ............................................................................... 15

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir. 1977) ............................................................................... 11

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ............................................................................. 15

**TABLE OF AUTHORITIES**
(continued)

Page

**Statutes**

28 U.S.C. § 1391(b) ................................................................................................ 7

28 U.S.C. § 1391(b)(1) ........................................................................................... 15

28 U.S.C. § 1391(c)(2) ........................................................................................... 15

28 U.S.C.§ 1406(a) ................................................................................................. 7

**Court Rules**

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 6, 16

Fed. R. Civ. P. 12(b)(3) ...................................................................................... 7, 16

**Other Authorities**

Cooper Companies "[o]perat[es] through CooperSurgical" ....................................... 12

Defendant Cooper Companies "[o]perat[es] through CooperSurgical" ....................... 3

**Constitutions**

U.S. Constitution ..................................................................................................... 6

**INTRODUCTION**

Plaintiffs Kearsten and Zachary Walden allege that Defendants CooperSurgical, Inc. ("CooperSurgical") and The Cooper Companies, Inc. ("Cooper Companies"), (collectively "Defendants") negligently designed, manufactured, marketed, distributed, sold, and failed to timely recall defective culture media product, an essential component of in vitro fertilization ("IVF"). The defect causes the culture to do the opposite of its intended use: it damages or destroys embryos, rather than develops them. Because of Defendants' conduct and defective product, all six of Plaintiffs' precious and irreplaceable embryos were destroyed. Like twenty-one other hopeful parents, Plaintiffs filed suit in this Court, where Cooper Companies is at home, and where a substantial portion of the alleged conduct took place, to bring to light what Defendants knew, when they knew it, and what they did with that knowledge related to their defective culture media, to seek just and fair remedies for their harms and losses, and to prevent other families experiencing their same devastation. Defendants now seek to dismiss Plaintiffs' claims.

Pursuant to the Court's May 10, 2024 Order (Dkt. 36) and guidance that an efficient use of judicial and party resources would be to brief threshold issues of personal jurisdiction and venue in one action before addressing other issues, Plaintiffs file this Limited Opposition to Defendants' Motions to Dismiss addressing only CooperSurgical's[1] motions to dismiss under 12(b)(2) (lack of personal jurisdiction) and 12(b)(3) (improper venue). Plaintiffs respond to arguments in both CooperSurgical and Cooper Companies' motions to dismiss for failure to state a claim under 12(b)(6) *only* to the extent they implicate personal jurisdiction and venue, and reserve all rights to raise additional arguments in any subsequent opposition to the motions under 12(b)(6).

Plaintiffs have satisfied their jurisdictional burden by making a prima facie showing that this Court has general personal jurisdiction over CooperSurgical and thus venue in this District is proper. While it is the exceptional case that a Court has general personal jurisdiction over a company outside the state where it is incorporated or headquartered, Plaintiffs have nevertheless

---

[1] Cooper Companies does not contest this Court's personal jurisdiction over it nor allege improper venue. Plaintiffs reserve arguments responding to Cooper Companies' claim that the complaint improperly "lumped" it together with CooperSurgical.

met their burden to show that CooperSurgical's contacts with California are so substantial and of such a nature as to render the corporation at home here. For example:

(1) CooperSurgical's entire leadership team works out of California;

(2) CooperSurgical has offices in California, including in Los Altos and Los Angeles;

(3) CooperSurgical's research and development, distribution, and administrative offices are located in Cooper Companies' 200,000 square feet "principal facilities";

(4) CooperSurgical's registration in Connecticut lists its mailing address as California; and

(5) CooperSurgical is registered with the California Secretary of State, has an agent for service of process in California, and pays California state taxes.

However, if the Court does not find personal jurisdiction over CooperSurgical on the present record, Plaintiffs have met their burden to present a colorable basis for jurisdiction and respectfully request that the Court defer ruling and grant leave for Plaintiffs to take targeted jurisdictional discovery to establish both specific and general personal jurisdiction, and in turn proper venue.

## FACTS

### A.     Plaintiffs' Allegations

Plaintiffs Kearsten and Zachary Walden are a married couple who sought fertility treatment at a fertility clinic in Virginia. Compl. (Dkt. 1) ¶ 70. They underwent the invasive, expensive, physically demanding, and emotionally taxing process of IVF in the hopes of having biological children. *Id.* ¶¶ 2, 71, 75. The process requires weeks of injections and medications, before a fertility doctor surgically retrieves a woman's eggs and technicians fertilize them with sperm in a laboratory. *Id.* at ¶¶ 21-23. Clinicians place IVF-fertilized eggs in a liquid called culture media, which is designed to replicate the conditions of a woman's body and allow the healthy development of embryos. *Id.* ¶¶ 3, 24-29. Relevant here, magnesium is a crucial ingredient in culture media to support embryonic development. *Id.* ¶ 30.

Defendants design, manufacture, market, and sell culture media to fertility clinics nationwide. *Id.* ¶¶ 6–8; Declaration of Sarah R. London ("Decl.") Ex. 1. In December 2023, Defendants recalled three lots of their embryo culture media after learning those lots were

defective. *Id.* ¶ 7. More particularly, the recalled culture media lacked sufficient amounts of the vital ingredient of magnesium, which resulted in the harming or destroying of the embryos that came into contact with the media. *Id.* ¶¶ 7, 58-59, 61-62.

Tragically, prior to the recall, clinics across the country had already placed patients' embryos in Defendants' defective culture media. *Id.* ¶¶ 7, 72–74. The deficient culture media destroyed many of the embryos, including all six of the Waldens' precious embryos. *Id.* ¶¶ 71-72.

### B.      Jurisdictional Facts Alleged in Plaintiffs' Complaint

Cooper Companies is a publicly traded medical device corporation with its principal place of business in San Ramon, California. *Id.* at ¶¶ 13, 19. Cooper Companies consists of only two business segments: 1) CooperSurgical, which manufactures fertility products and medical devices for the women's healthcare market; and 2) CooperVision, which manufactures contact lenses. *Id.* ¶ 13.

CooperSurgical is a Delaware corporation with its principal place of business in Trumbull, Connecticut. *Id.* at ¶ 14. It is a wholly owned subsidiary of Cooper Companies. *Id.*

CooperSurgical has offices in California, including in Los Altos and Los Angeles. *Id.* at ¶ 19. CooperSurgical markets its products, including its Global Media, throughout California. *Id.*

The Complaint alleges that "Defendants are residents and/or do business in the State of California" and "have purposely availed themselves of the benefits, protections, and privileges of the laws of the State of California in conducting their business, and have purposely directed their activities in this State." *Id.*

Plaintiffs further allege that Defendant Cooper Companies "[o]perat[es] through CooperSurgical" to be "a prominent leader in the global infertility treatment market." *Id.* ¶ 44. CooperSurgical describes itself as "the global leader in IVF and reproductive genetics, providing innovative products and services for every step in the ART journey," *id*. ¶ 39, and Cooper Companies claims that "[w]e elevate standards of care with best-in-class devices for . . . women's health, and fertility," *id.* ¶ 41. Together, Defendants "have positioned themselves as leaders in the reproductive health and infertility treatment fields." *Id.* ¶ 38.

### C. Additional Jurisdictional Facts

Several additional facts—learned since the filing of the complaint—support personal jurisdiction over CooperSurgical in California, and further illuminate its corporate relationship with Cooper Companies and Cooper Companies' involvement in the alleged acts and omissions.

CooperSurgical did not merely target California fertility clinics with its marketing and sales efforts as alleged. On information and belief, CooperSurgical sold its recalled, defective culture media to more California-based fertility clinics than to clinics in any other State. Not surprisingly, therefore, a substantial number of California-based patients had their eggs and/or embryos exposed to the Recalled Media and destroyed as a result of that exposure. Decl. ¶ 3.

A significant portion of the acts and omissions complained of occurred in California. Among those acts and omissions are the failures by CooperSurgical's leadership team to ensure the safe manufacture and design of the culture media, which occurred where CooperSurgical's leadership was located—in California. This is true both because CooperSurgical's CEO works out of California and because of the close involvement of Cooper Companies (located in San Ramon) in the operations of CooperSurgical. Other operational activity for CooperSurgical also occurs in California.

First, as stated in Cooper Companies' SEC filings, Cooper Companies employs and controls CooperSurgical's top executive, President Holly Sheffield. Ms. Sheffield's employment agreement is exclusively with Cooper Companies. Decl. Ex 3. Under that agreement, Ms. Sheffield "shall render exclusive, full-time services to [The Cooper Companies, Inc.] and its subsidiaries, and exercise such authority and perform such duties as assigned to [Ms. Sheffield] by [The Cooper Companies'] Chief Executive Officer (the 'CEO')." *Id.* at 1. Ms. Sheffield "shall perform services under this Agreement primarily at [The Cooper Companies'] office in Pleasanton, California[.]" *Id.* Duties may be modified "at the sole discretion of the CEO" or Cooper Companies' Board of Directors. *Id.* Ms. Sheffield's employment agreement was recently incorporated by reference into Cooper Companies' FY23 Form 10-K. Decl. Ex. 2.

Second, in its registration with the Connecticut Secretary of State, the mailing address for CooperSurgical is the same California address as for Cooper Companies: 6101 Bollinger Canyon

Rd., Suite 500, San Ramon, California. Decl. Exs. 4, 7.

Third, CooperSurgical's four principals are all employed in California. CooperSurgical filed a report with the Connecticut Secretary of State in 2024. Decl. Ex. 4. That report lists four principals, three of whom are employed in California with Cooper Companies: Cynthia Wallace, Secretary, San Ramon CA; Agostino Ricupati, Director, San Ramon CA; and Brian Andrews, Treasurer and Vice President, San Ramon CA. *Id.* The fourth, Holly Sheffield, lists the Trumbull, Connecticut business address of CooperSurgical but, as discussed, her employment agreement states that she works primarily in Pleasanton, California. Decl. Exs. 3, 4.

Fourth, in Cooper Companies' FY23 Form 10-K, Cooper Companies represents that it "operates through two business segments, CooperVision and CooperSurgical" and its "principal facilities" include 200,000 square feet in California, with operations including "Executive offices; . . . CooperSurgical research & development, distribution and administrative offices." Decl. Ex. 2 at 7, 40.

Fifth, CooperSurgical is registered with the California Secretary of State and is in good standing. Decl. Ex. 7. CooperSurgical's most recent Statement of Information, lists San Ramon, CA as its mailing address, lists two of three officers' addresses as San Ramon, CA, and lists a California Registered Agent for service of process. *Id.* CooperSurgical is in good standing with the California Franchise Tax Board and pays California state tax. Decl. Ex. 8.

Further illustrating the unity of interest between the Defendants and Cooper Companies' role in Plaintiffs' claims, Defendants have been working to secure a release of liability for *both* CooperSurgical and Cooper Companies from patients affected by the recalled, defective media. In a related action in this District, *F.G. et al v. CooperSurgical Inc. et al*, Case No. 4:24-cv-01261-JST (N.D. Cal.), CooperSurgical admitted that it is running a settlement program seeking "a full release of all claims relating to the recalled culture media." *Id.* Dkt. 30 at 3-4 (CooperSurgical Brief). While the language of the release is described in the brief and accompanying declaration, CooperSurgical did not attach a copy of that release to its filing. *See id.* Plaintiffs have now learned that both Cooper Companies and CooperSurgical are named as released parties in the draft settlement agreement that they pressure affected patients to sign. Decl. Ex 6; *id.* ¶ 14. The

1    draft release including Cooper Companies was created in January 2024—before any of the cases

2    in this District were filed. Decl. ¶¶ 12-14.

3                                    **LEGAL STANDARD**

4    **I.       Rule 12(b)(2) – Personal Jurisdiction**

5            The plaintiff bears the burden of establishing jurisdiction in opposition to a Rule 12(b)(2)

6    motion to dismiss for lack of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015

7    (9th Cir. 2008). However, where, as here, the motion is based on the pleadings and not an

8    evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."

9    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher v.

10   Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)); *id.* (quoting *Caruth v. Int'l Psychoanalytical

11   Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) ("In such cases, 'we only inquire into whether [the

12   plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.'").

13   "[U]ncontroverted allegations in the complaint must be taken as true. Conflicts between parties

14   over statements contained in affidavits must be resolved in the plaintiff's favor."

15   *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citations omitted).

16           Federal courts ordinarily follow state law in evaluating jurisdiction, and "California's

17   long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under

18   the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *In re Boon Glob. Ltd.*,

19   923 F.3d 643, 650 (9th Cir. 2019) ("Because California's long-arm jurisdictional statute is

20   coextensive with federal due process requirements, the jurisdictional analyses under state law and

21   federal due process are the same."). The Fourteenth Amendment's Due Process Clause requires

22   that the defendant "have certain minimum contacts" with the forum state, "such that the

23   maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.*

24   (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The strength of the contacts

25   required to comply with due process depends on whether the court exercises general or all-

26   purpose jurisdiction, or specific or case-linked jurisdiction. *Hernandez v. Mimi's Rock Corp.*, 632

27   F. Supp. 3d 1052, 1057 (N.D. Cal. 2022).

28           "A court with general jurisdiction may hear any claim against that defendant, even if all

1    the incidents underlying the claim occurred in a different State. *Bristol-Myers Squibb Co. v.*

2    *Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (emphasis in the original).

3    An exercise of specific jurisdiction, on the other hand, requires that the suit "aris[e] out of or

4    relat[e] to the defendant's contacts with the forum." *Id.* (citation and quotation marks omitted).

5    "In other words, there must be an affiliation between the forum and the underlying controversy,

6    principally [an] activity or an occurrence that takes place in the forum State and is therefore

7    subject to the State's regulation." *Hernandez*, 632 F. Supp. 3d at 1057-58 (quoting *Bristol-Myers*

8    *Squibb Co.*, 582 U.S. at 262).

9    **II.**      **Rule 12(b)(3) – Venue**

10         As with jurisdiction, once a defendant moves to dismiss for improper venue under Rule

11   12(b)(3), the burden is on the plaintiff to show venue is proper. *Knuttel v. Omaze, Inc.*, 572 F.

12   Supp. 3d 866, 869 (N.D. Cal. 2021). "When venue is challenged, the court must determine

13   whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is

14   proper; if it does not, venue is improper, and the case must be dismissed or transferred under §

15   1406(a)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013).

16   "In evaluating a Rule 12(b)(3) motion to dismiss for improper venue, the 'pleadings need not be

17   accepted as true, and facts outside the pleadings may be considered.'" *Salesforce.com, Inc. v.*

18   *GEA, Inc.*, 462 F. Supp. 3d 1004, 1006 (N.D. Cal. 2020) (quoting *Doe 1 v. AOL LLC*, 552 F.3d

19   1077, 1081 (9th Cir. 2009)).

20                               **ARGUMENT**

21         Plaintiffs have satisfied their jurisdictional burden by making a prima facie showing that

22   this Court has general personal jurisdiction over CooperSurgical because CooperSurgical's

23   contacts in California are so "'continuous and systematic' as to render it essentially at home in the

24   forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)

25   (quoting *International Shoe*, 326 U.S. at 317). With respect to specific personal jurisdiction (and

26   to general personal jurisdiction, if needed), Plaintiffs would require limited discovery on

27   CooperSurgical's culture media failure to establish specific personal jurisdiction. Therefore, if

28   this Court finds that it lacks general personal jurisdiction at this stage, then, in the alternative,

1  Plaintiffs respectfully request limited and targeted jurisdictional discovery to establish both

2  general and specific personal jurisdiction, including under theories of alter ego and agency.

3  **I.      Plaintiffs Have Made A Prima Facie Showing of General Personal Jurisdiction Over**
   **CooperSurgical**

4

5       Defendants cite the "paradigm basis" for general jurisdiction: the corporation's place of

6  incorporation and principal place of business. But they overlook the alternate, albeit exceptional,

7  basis the Supreme Court has repeatedly recognized for a court to assert general jurisdiction over a

8  defendant. Mot. at 2. While the parties agree that CooperSurgical's place of incorporation and

9  principal place of business is not California, relevant here is that court may also "assert general

10  jurisdiction over foreign . . . corporations to hear any and all claims against them when their

11  affiliations with the State are so 'continuous and systematic' as to render them essentially at home

12  in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)

13  (citing *International Shoe*, 326 U.S., at 317); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137,

14  139 n.19 (2014); *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 403 (2017). This inquiry "examines a

15  corporation's activities worldwide—not just the extent of its contacts in the forum state—to

16  determine where it can be rightly considered at home." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070

17  (9th Cir. 2015) (*citing Daimler*, 571 U.S. at 139 n. 20).

18       Although CooperSurgical is neither incorporated nor has its principal place of business in

19  California, this Court nonetheless has general jurisdiction because CooperSurgical's contacts with

20  California are "so substantial and of such a nature as to render the corporation at home in that

21  State." *Daimler AG*, 571 U.S. at 139 n.19, 20 (declining to exercise general jurisdiction over

22  Daimler because "the same global reach would presumably be available in every other State in

23  which [the subsidiary's] sales are sizable" and a "corporation that operates in many places can

24  scarcely be deemed at home in all of them.").

25       First, *every member* of CooperSurgical's leadership team works out of California, not

26  Connecticut. CooperSurgical's 2024 report to the Connecticut Secretary of State lists four

27  principals, three of whom are employed in San Ramon, California: Cynthia Wallace (Secretary);

28  Agostino Ricupati (Director); and Brian Andrews (Treasurer and Vice President). Decl. Ex. 4.

CooperSurgical's most recent (2023) Statement of Information to the California Secretary of State lists three officers, two of whom are employed in San Ramon: Cynthia Wallace (Secretary) and Brian Andrews (CFO). While Holly Sheffield's (CEO) business addresses is listed in both reports as the Trumbull, Connecticut business address of CooperSurgical, her employment agreement states unequivocally that she works primarily in Pleasanton, California. Decl. Ex. 7.

Second, CooperSurgical has offices in California, including in Los Altos and Los Angeles. Compl. at ¶ 19. More pointedly, CooperSurgical's registration with the Connecticut Secretary of State does not even provide a Connecticut mailing address, but instead lists a San Ramon, California address as its mailing address. Decl. Ex. 4. Cooper Companies' "principal facilities" include 200,000 square feet in California, with operations including "CooperSurgical research & development, distribution and administrative offices." Decl. Ex. 2 at 40.

Third, CooperSurgical is registered with the California Secretary of State, has an agent for service of process in California, and pays California state taxes. Decl. Exs. 7, 8.

In *Martinez v. Aero Caribbean,* the Ninth Circuit declined to exercise general jurisdiction where the foreign corporation had "no offices, staff, or other physical presence in California, and it is not licensed to do business in the state." 764 F.3d 1062, 1070 (9th Cir. 2014). Similarly, in *LiveCareer*, this Court concluded that the exercise of general jurisdiction was inappropriate where the corporate defendant "does not own or rent property in California, is not registered with the Secretary of State of California, has no agent for service of process in California, and does not pay any California state taxes." *LiveCareer Ltd v. Su Jia Techs. Ltd.*, No. 14-CV-03336-JST, 2015 WL 1448505, at *3 (N.D. Cal. Mar. 31, 2015); *see also Lindblad v. Linde AG*, No. 23-CV-06179-JSC, 2024 WL 923773, at *2 (N.D. Cal. Mar. 4, 2024) (finding Plaintiffs failed to allege defendant was at home in California where defendant had "no employees, licenses, real property, bank accounts, corporate records, or places of business in California.").[2] Yet here,

---

[2] In *AutoRABIT Holding, Inc. v. Copado*, *Inc*., this Court, recognizing the exceptional circumstances test sets a high bar, found defendant's presence in California was only temporary and its large California revenues and customer base, Californian staff, use of California choice of law in contracts, and attendance at California conferences did not amount to sufficient contacts for general jurisdiction. *AutoRABIT Holding, Inc. v. Copado, Inc.*, No. 23-CV-01247-JST, 2024 WL 24328, at *3 (N.D. Cal. Jan. 2, 2024).

CooperSurgical meets *all* of these conditions.

Plaintiffs are not arguing merely that CooperSurgical "sends employees and products into [the forum State] and engages in commercial transactions there." *Ranza*, 793 F.3d at 1070. Rather, Plaintiffs allege that California, unlike all other states, is where CooperSurgical's entire leadership team is based; is the location of CooperSurgical research and development, as well as its distribution and administrative offices; and, despite designating Connecticut as its principal place of business, is the location of its listed mailing address. Indeed, California can be considered "a surrogate for the place of incorporation or head office." *Daimler*, 571 U.S. at 130 n.8.

In sum, Plaintiffs have made a prima facie showing that CooperSurgical's operations in California are "so substantial and of such a nature as to render the corporation at home" in California and thus subject to this Court's general jurisdiction. *BNSF Ry. Co.,* 581 U.S. at 404.

## II.     In the Alternative, Plaintiffs Are Entitled to Jurisdictional Discovery to Establish Personal Jurisdiction

If the Court were not inclined to find general personal jurisdiction on the present record, Plaintiffs request that the Court defer ruling and grant leave for Plaintiffs to take targeted jurisdictional discovery to establish both specific and general personal jurisdiction. *See, e.g., MN Inv. Inc. v. Nguyen*, No. 22-CV-02814-LB, 2022 WL 3974263, at *1 (N.D. Cal. Aug. 31, 2022) (ordering jurisdictional discovery so that personal jurisdiction could be decided on a full record); *eMag Sols., LLC v. Toda Kogyo Corp*., No. C 02-1611 PJH, 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006) (allowing plaintiff to conduct jurisdictional discovery to oppose defendant's motion to dismiss).

District courts have "broad discretion" to permit jurisdictional discovery. *Hernandez*, 632 F. Supp. 3d at 1062 (citation and quotation marks omitted). When the "jurisdictional facts are contested or more facts are needed," such discovery should be granted. *Id*. (citing *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)); *see also Boschetto*, 539 F.3d at 1020 (recognizing that jurisdictional discovery can be appropriate "where pertinent facts bearing on the

question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary") (citation and quotation marks omitted).

Courts in the Northern District of California have held that "a plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery." *Hernandez*, 632 F. Supp. 3d at 1062 (citation and quotation marks omitted). This is because it would be "counterintuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss." *Id.* (citation and quotation marks omitted). Accordingly, courts recognize that a plaintiff must only present a "'colorable basis' for jurisdiction, or 'some evidence' constituting a lesser showing than a prima facie case." *Id.* (citing cases); *see also Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 674 (S.D. Cal. 2001) (holding that, to defeat plaintiff's request for discovery, defendant could not "meet the relatively high burden of establishing that 'it is clear that further discovery would *not* demonstrate facts sufficient to constitute a basis for jurisdiction.'") (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 (9th Cir. 1977)).

Plaintiffs have presented a colorable basis, at the very least, that CooperSurgical is properly subject to this Court's jurisdiction, because: (1) the unity of interest and ownership between CooperSurgical and Cooper Companies is such that it is just to disregard their separate identities, satisfying general jurisdiction under an alter ego theory; (2) Plaintiffs' claims arise out of CooperSurgical's contacts with California, satisfying specific jurisdiction; and/or (3) CooperSurgical acted on Cooper Companies' behalf, subject to its control, and Cooper Companies had the right to substantially control CooperSurgical's activities.

### A.  Discovery Can Establish General Jurisdiction Under An Alter Ego Theory

Under the alter ego theory of personal jurisdiction, "[a] parent corporation's relationship with its subsidiary may confer personal jurisdiction over the parent if the subsidiary is acting as the parent company's alter ego, 'so as to justify disregard of the corporate entity.'" *Hernandez*, 632 F. Supp. 3d at 1058 (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)). To invoke the alter ego exception to the general rule that parent and subsidiary are separate entities, the plaintiff must make out a prima facie case that "(1) that there

is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id*. The first prong of the alter ego exception requires "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation." *Id*. at 1059.

The record suggests—and discovery could confirm—that Cooper Companies has pervasive control over its wholly owned subsidiary CooperSurgical so as to meet this standard. Plaintiffs allege that Cooper Companies "[o]perat[es] through CooperSurgical" to be "a prominent leader in the global infertility treatment market." Compl. ¶ 44. Cooper Companies employs and controls CooperSurgical's top executive, President Holly Sheffield. Decl. Ex. 3 (noting that Mrs. Sheffield shall render "exclusive, full-time services" to Cooper Companies and exercise such authority and perform such duties as assigned by Cooper Companies' CEO). Ms. Sheffield works primarily out of Cooper Companies' office in Pleasanton, California. *Id.* Further, three of the four principals listed in CooperSurgical's 2024 report with the Connecticut Secretary of State are employed in California with Cooper Companies (the fourth is Ms. Sheffield). Decl. Ex. 4. The same report lists the same San Ramon, California mailing address in for both companies. *Id*. Further demonstrating the unity of interest between Defendants, *both* Cooper Companies and CooperSurgical are named as released parties in the recalled culture media settlement agreement that Defendants are pushing patients to sign. Decl. Ex. 6.

Targeted jurisdictional discovery can further illuminate the relationship between the two entities in terms of how and to what degree Cooper Companies dictates aspects of CooperSurgical's business—information exclusively within Defendants' control.

### B. <u>Discovery Can Establish Traditional Specific Jurisdiction</u>

There are three requirements for specific jurisdiction: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v.*

*Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) (citation omitted). Plaintiffs bear the burden of satisfying the first two prongs; if met, the burden shifts to the defendant to make a "compelling case" that exercise of jurisdiction would not be reasonable.[3] *Id*. at 1068-69.

As to the first prong, even a "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007). And the second prong does not require "a strict causal relationship between the defendant's in-state activity and the litigation." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*., 592 U.S. 351, 362 (2021). Rather, there must only exist "a strong relationship among the defendant, the forum, and the litigation." *Id*. at 353 (citation and quotation marks omitted). The Ninth Circuit has recognized that "in [] consideration of the first two prongs, [a] strong showing on one axis will permit a lesser showing on the other." *LNS Enterprises LLC v. Cont'l Motors, Inc*., 22 F.4th 852, 859 (9th Cir. 2022) (citation and quotation marks omitted).

As stated above, Plaintiffs require basic discovery to confirm that CooperSurgical has purposefully directed its activities toward California, and that Plaintiffs' claims arise out of CooperSurgical's California-related activities. The record already suggests as much: a significant portion of the acts and omissions complained of, including CooperSurgical leadership's failure to ensure the safe manufacture and design of the culture media and decision-making regarding the recall, occurred in California. *See Baires v. United States*, No. C 09-5171 CRB, 2010 WL 3515749, at *6 (N.D. Cal. Sept. 8, 2010) (exercising jurisdiction over individuals involved in "setting the nationwide policies that … shape[d] the behavior … within the State of California"); *Huddleston v. John Christner Trucking, LLC*, No. 1:17-CV-00925-LJO-SAB, 2017 WL 4310348, at *5 (E.D. Cal. Sept. 28, 2017) ("The policies at issue may have their origin in Oklahoma, but [defendant's] decision to purposefully direct its activities toward California and apply those policies in this forum give rise to specific personal jurisdiction."). California-based Cooper Companies employs and controls CooperSurgical's top executive, who works primarily out of Cooper Companies' Pleasanton, California office. Decl. Ex. 3. Indeed, CooperSurgical's four

---

[3] CooperSurgical does not argue that the exercise of jurisdiction here would be unreasonable.

principals are all employed in California. Decl. Ex. 4. And Cooper Companies represents that CooperSurgical research and development occurs at its principal facilities in California. Decl. Ex. 2.

Further, CooperSurgical has offices and markets its products, including its culture media, in California. Compl. ¶ 19. CooperSurgical sold its recalled culture media to clinics in California, and many California-based patients of those clinics who received the recalled media had their eggs and/or embryos destroyed as a result. Decl. Ex. 1 at 1; *id.* ¶ 3. In fact, data from Plaintiffs' counsel indicates that Defendants sold the recalled media to more clinics in California than any other state—but discovery is necessary to confirm this disproportionate impact. Decl. ¶ 3. *See Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 794 (N.D. Cal. 2020) (suggesting that jurisdiction would be appropriate if plaintiffs could show that the revenue generated from California was "outsized" or significantly "more than" any other state). Finally, both Cooper Companies and CooperSurgical are named as released parties in the draft settlement agreement that Defendants are pressuring patients to sign regarding its recalled culture media—meaning that at a minimum California-based Cooper Companies believes it played some role in the out-of-state Plaintiffs' claims. Decl. Ex. 6. Again, limited discovery into Defendants' internal policies, practices, and communications can serve to verify that these facts are part of a larger pattern of purposeful availment and California-based activities connected to Plaintiffs' claims. In circumstances like those presented here, the practical reality is that without discovery, Plaintiffs have only sparse information regarding the nuances of how CooperSurgical carried out its activities.

### C.    Discovery Can Establish Specific Jurisdiction Under An Agency Theory

Finally, the discovery Plaintiffs seek may well establish that jurisdiction is proper under an agency theory. "Agency relationships . . . may be relevant to the existence of *specific* jurisdiction. . . . [A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler*, 571 U.S. at 135 n.13 (emphasis in the original). Under an agency theory, the agent acts "on the principal's behalf and subject to the principal's control," and "the parent company must have the right to substantially control its subsidiary's activities."

1  *Hernandez*, 632 F. Supp. 3d at 1060 (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015,

2  1024-25 (9th Cir. 2017)).

3      Here, Plaintiffs allege that Cooper Companies operates through CooperSurgical. Decl. Ex.

4  2 at 7 ("Cooper operates through two business segments, CooperVision and CooperSurgical").

5  Plaintiffs further allege that Cooper Companies controls CooperSurgical's top executive,

6  President Holly Sheffield, and assigns all her duties. Decl. Ex 3. Jurisdictional discovery can

7  establish the high degree of control Cooper Companies exerts over CooperSurgical, including

8  confirming that CooperSurgical acted on behalf of Cooper Companies and that Cooper

9  Companies substantially controlled CooperSurgical's activities beyond its control of Ms.

10  Sheffield.

11      Plaintiffs have met their burden to present a "colorable basis for jurisdiction" and are

12  entitled to jurisdictional discovery. *Hernandez*, 632 F. Supp. 3d at 1062.

13  **III.    Establishing Jurisdiction Will Resolve Venue**

14      Venue is proper in "a judicial district in which any defendant resides, if all defendants are

15  residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). For the purposes of

16  venue, a corporate defendant resides in "any judicial district in which such defendant is subject to

17  the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. §

18  1391(c)(2).

19      Should the Court find that Plaintiffs have established personal jurisdiction over

20  CooperSurgical, "it follows that venue [in the Northern District of California] is also proper."

21  *Salesforce.com, Inc.*, 462 F. Supp. 3d at 1009 (citing *United States v. Park Place Assocs., Ltd.*,

22  563 F.3d 907, 929 n.14 (9th Cir. 2009)). Alternatively, should the Court find that Plaintiffs have

23  not established personal jurisdiction over CooperSurgical, the targeted discovery that Plaintiffs

24  seek will serve to resolve both personal jurisdiction and venue in regards to CooperSurgical.

25  There is no dispute that the Court has personal jurisdiction and venue is proper as to Cooper

26  Companies.

27  **CONCLUSION**

28      For the foregoing reasons, the Court should deny Defendants' motions to dismiss under

Rule 12(b)(2) and 12(b)(3). In the alternative, the Court should grant Plaintiffs' request for

jurisdictional discovery.


Dated:  May 28, 2024                           /s/ *Sarah R. London*
                                        Sarah R. London
                                        Tiseme G. Zegeye
                                        **LIEFF CABRASER HEIMANN &**
                                        **BERNSTEIN, LLP**
                                        275 Battery Street, 29th Floor
                                        San Francisco, CA 94111-3339
                                        Telephone: (415) 956-1000
                                        Facsimile: (415) 956-1008
                                        Email: tzegeye@lchb.com
                                        Email: slondon@lchb.com

                                        Hannah R. Lazarz (*pro hac vice forthcoming*)
                                        **LIEFF CABRASER HEIMANN &**
                                        **BERNSTEIN, LLP**
                                        222 2nd Avenue South, Suite 1640
                                        Nashville, TN  37201-2379
                                        Telephone:  615.313.9000
                                        Facsimile:  615.313.9965
                                        hlazarz@lchb.com

                                        *Attorneys for Plaintiffs Kearsten Walden and Zachary*
                                        *Walden; Jamie Woods and Lee Woods; Brooke Oxendine*
                                        *and Michael Oxendine*

                                         /s/ *Dena C. Sharp*
                                        Dena C. Sharp (State Bar No. 245869)
                                        Adam E. Polk (State Bar No. 273000)
                                        Nina R. Gliozzo (State Bar No. 333569)
                                        **GIRARD SHARP LLP**
                                        601 California Street, Suite 1400
                                        San Francisco, CA 94108
                                        Telephone: (415) 981-4800
                                        Facsimile: (415) 981-4846
                                        Email: dsharp@girardsharp.com
                                        Email: apolk@girardsharp.com
                                        Email: ngliozzo@girardsharp.com

                                        *Counsel for Plaintiffs F.G. and H.I. and the Proposed Class;*
                                        *A.B. and C.D.; J.K. and L.M.; N.O. and P.Q.; R.S.*

                                         /s/ *Tracey B. Cowan*

Tracey B. Cowan (State Bar No. 250053)
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103
Telephone: (213) 788-4050
Facsimile: (213) 788-4070
Email: tcowan@clarksonlawfirm.com

Ryan J. Clarkson (State Bar No. 257074)
Shireen M. Clarkson (State Bar No. 237882)
Olivia E. Davis (State Bar No. 353041)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: (213) 788-4050
Facsimile: (213) 788-4070
Email: rclarkson@clarksonlawfirm.com
Email: sclarkson@clarksonlawfirm.com
Email: odavis@clarksonlawfirm.com

*Attorneys for Plaintiffs E.F. and G.H.; Q.R. and S.T.; I.J.*
*and K.L.; M.N. and O.P.; CLF 001 and CLF 002; CLF 003*
*and CLF 004; CLF 005 and CLF 006*

 /s/ Adam Brett Wolf
Adam Brett Wolf
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 766-3545
Email: awolf@peifferwolf.com

Melisa Rosadini-Knott
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
3435 Wilshire Blvd., Suite 1400
Los Angeles, CA 90010
Telephone: 323-982-4109
Email: mrosadini@peifferwolf.com

*Attorneys for Plaintiffs J.B. and M.B.; M.N. and O.P.*

Corey Morgenstern
Michael A. Rose
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, NY 10016

-17-

PLS' OPP. TO DEFS' MOTIONS TO DISMISS
CASE NO. 4:24-CV-00903-JD

Telephone: 212-779-0057
Email: csmorgenstern21@gmail.com
Email: info@hachroselaw.com

*Attorneys for Plaintiffs J.B. and M.B.*

 /s/ *Joseph M. Lyon*
Joseph M. Lyon
**THE LYON FIRM**
9210 Irvine Center Drive
Irvine, CA 92618
Telephone: 513-381-2333
Facsimile: 513-766-9011
Email: jlyon@thelyonfirm.com

*Attorneys for Plaintiffs J.S. and A.S.*

-18-