UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEARSTEN WALDEN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE COOPER COMPANIES, INC., et al., <br><br> Defendants. | Case No. 24-cv-00903-JST <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND GRANTING PLAINTIFFS JURISDICTIONAL DISCOVERY** <br><br> Re: ECF Nos. 16. 17 |

Before the Court are motions to dismiss by The Cooper Companies ("CooperCompanies[1]") and CooperSurgical, Inc. ("CooperSurgical"). ECF Nos. 16, 17. The Court will grant the motions.

I.  **BACKGROUND**

   A.  **Defendants CooperSurgical, Inc. and The CooperCompanies**

Defendants CooperSurgical and CooperCompanies "manufacture and market multiple lines of 'cutting-edge ART culture media'" for in vitro fertilization ("IVF") procedures. ECF No. 1 ¶ 53.[2] "Among Defendants' culture media is the CooperSurgical LifeGlobal global® Media (the 'Global Media')." *Id.* ¶ 54. "Embryo culture media is an essential part of the development of embryos through IVF. The culture media is developed to mimic the fluids in a woman's reproductive tract to closely approximate the natural environment and circumstances of a developing embryo." *Id.* ¶ 27.

In December 2023, Defendants issued a recall of three lots of media. *Id.* ¶¶ 7, 58. The

---
[1] Plaintiffs refer to Defendant CooperCompanies as "Cooper Companies" throughout their briefing. Unless directly quoting Plaintiffs, the Court will refer to Defendant as "CooperCompanies."
[2] CooperSurgical is "a wholly owned subsidiary" of CooperCompanies. ECF No. 1 ¶ 14.

recall notice stated, in part, that "'CooperSurgical [had] become aware of a sudden increase in complaints regarding the aforementioned lots of this product' and identifie[d] that '[t]he risk to health is impaired embryo development prior to the blastocyst stage.'" *Id.* ¶ 59. Plaintiffs' complaint avers that "Defendants knew or should have known that magnesium is a critical component and essential element of embryo culture media, and that a lack of magnesium in the Global Media may result in the destruction or arrested development of human embryos." *Id.* ¶ 61. "[O]n information and belief," Plaintiffs contend that "Defendants failed to adequately monitor their manufacturing systems and processes, and allowed for the production of embryo culture media without ensuring that sufficient amounts of magnesium was included." *Id.* ¶ 62.

### B. Plaintiffs Kearsten and Zachary Walden

Plaintiffs Kearsten and Zachary Walden "have been trying to create their family since 2014." *Id.* ¶ 2. After "saving up to afford [IVF] treatments," "Plaintiffs were finally able to undergo IVF in order to achieve their dream of having a biological child and a sibling for their adopted son." *Id.* Kearsten underwent an egg retrieval in November 2023. *Id.* ¶ 3. "Plaintiffs were shattered when they learned that none of their fertilized eggs survived the incubation period to develop into healthy blastocysts." *Id.* ¶ 4 (emphasis omitted). "Months later, Plaintiffs' fertility provider informed Plaintiffs that their precious, irreplaceable embryos had actually been destroyed by Defendants' embryo culture media." *Id.* ¶ 5.

Plaintiffs filed this action against Defendants on February 15, 2024, alleging, *inter alia*, strict products liability (manufacturing defect, design defect, and failure to warn), negligence or gross negligence, negligent failure to recall, trespass to chattels, and unjust enrichment. *Id.* at 1. Including the present case, there are now at least 39 cases pending before the undersigned making similar claims against Defendants.

### C. Present Motion

Following the May 6, 2024 case management conference, "the Court directed the parties to address issues of personal jurisdiction and venue first by selecting one of the six cases where a motion to dismiss is pending and filing a limited opposition and limited reply addressing only those issues." ECF No. 36 at 7. The parties agreed to respond to arguments raised in *Kearsten*

*Walden and Zachary Walden v. CooperSurgical, Inc. et al.*, Case No. 4:24-cv-00903-JST. *Id.* On June 14, 2024, the Court ordered Plaintiffs to file a sur-reply addressing CooperCompanies' argument that it is not properly joined as a Defendant in compliance with Federal Rule of Civil Procedure 8(a)(2). ECF No. 43.

## II.   JURISDICTION

Plaintiffs allege this Court has jurisdiction under 28 U.S.C. § 1332.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), the court must dismiss an action when it does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where "the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and citations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* Because the applicable state "statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

Due process permits a court to exercise personal jurisdiction over a defendant only when "the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Impossible Foods*

*Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023) (internal quotation marks and citation omitted)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015).

"A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (emphasis omitted). General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id*. at 137 (quoting *Goodyear*, 564 U.S. at 924). If a business is not incorporated in, and does not have its principal place of business in a forum state, "[o]nly in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler AG*, 571 U.S. at 139 n.19).

"Specific jurisdiction is very different." *Bristol-Myers*, 582 U.S. at 262. For the court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Id*. "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Id*. (quoting *Goodyear*, 564 U.S. at 919).

Because California's long-arm jurisdictional statute authorizes jurisdiction to the fullest extent permitted by the Constitution, *see* Cal. Code Civ. P. § 410.10, the central question is whether the defendant has "at least 'minimum contacts' with [California] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

The Ninth Circuit has established a three-part inquiry, referred to as the minimum contacts test, to determine whether a court has specific personal jurisdiction over a defendant:

4

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### B. Rule 8(a)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV. DISCUSSION

The Court first addresses CooperCompanies' argument that it is improperly joined as a Defendant under Federal Rule of Civil Procedure 8(a) before turning to whether the Court has

1  jurisdiction over CooperSurgical. It then examines whether Plaintiffs have demonstrated that
2  jurisdictional discovery is warranted.

### A. CooperCompanies Is Not Properly Joined Under Rule 8(a)

CooperCompanies argues that "the allegations in the Complaint against CooperCompanies are legally insufficient to establish joinder and, hence, insufficient to establish proper venue." ECF No. 41 at 6. CooperCompanies avers that Plaintiffs have failed to provide fair notice of the claims against it because "the Complaint impermissibly pleads general allegations against all defendants collectively without differentiating the specific actions of each defendant or alleging any particular actions on the part of CooperCompanies." ECF No. 16 at 9; *see also* ECF No. 48 at 2–4. Plaintiffs respond that their allegations "suffice to give CooperCompanies the requisite fair notice of claims against it under the liberal pleading standard of Rule 8." ECF No. 46 at 6. Construing the pleadings in the light most favorable to Plaintiffs—as the Court must do at this stage, *Robinson v. J.M. Smucker Co.*, No. 18-cv-04654-HSG, 2019 WL 2029069, at *2 (N.D. Cal. May 8, 2019)—the Court agrees with CooperCompanies that Plaintiffs' complaint impermissibly groups together Defendants such that it runs afoul of Rule 8.

"In certain contexts, 'grouping multiple defendants together in a broad allegation is insufficient [under Rule 8(a)] to provide the defendants with fair notice of the claims against them and the grounds for relief.'" *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2021 WL 9763371, at *5 (N.D. Cal. Feb. 8, 2021), *opinion vacated in part on reconsideration*, No. 19-cv-05784-JST, 2021 WL 11714935 (N.D. Cal. Dec. 7, 2021) (quoting *Yu v. Design Learned, Inc.*, No. 15-cv-05345, 2016 WL 1621704, at *4 (N.D. Cal. Apr. 22, 2016)). Nonetheless, "'[g]roup pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Celgard, LLC*, 2021 WL 9763371, at *5 (quoting *Tivoli LLC v. Sankey*, No. SA CV 14-1285-DOC, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015)). Although a complaint may "collectively refer[] to defendants," the complaint may still survive Rule 8's pleading requirements "if it can be reasonably inferred that each and every allegation is made against each individual defendant." *Groove Digital, Inc. v. King.com, Ltd.*, No. 18-cv-00836-RGA, 2018 WL 6168615, at *1 (D. Del. Nov. 26, 2018) (internal quotation marks

6

and citation omitted); *cf. Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *3 (N.D. Cal. May 5, 2011) (dismissing complaint where allegations failed to "distinguish[] among the defendants" and where complaint was "rife with allegations of wrongdoing by undifferentiated defendants").

As CooperCompanies rightfully notes, Plaintiffs' complaint does not "alert CooperCompanies as to what it allegedly did or how its conduct gives rise to liability." ECF No. 48 at 2. True, the complaint does allege that CooperCompanies "[o]perat[es] through CooperSurgical." ECF No. 1 ¶ 44. But this single, conclusory allegation is insufficient to put each Defendant (and most relevant here, CooperCompanies) on notice of the claims against it. *See Corazon*, 2011 WL 1740099, at *4 ("Undifferentiated pleading against multiple defendants is improper" because it fails to give each defendant notice of the specific allegations and claims that pertain to it). *Steinley v. Health Net, Inc.*, No. CV 18-5458 PSG (SKX), 2018 WL 6985318 (C.D. Cal. Dec. 4, 2018) ("*Steinley I*") and *Steinley v. Health Net, Inc.*, No. CV 18-5458 PSG (SKX), 2019 WL 3059383 (C.D. Cal. Mar. 28, 2019) ("*Steinley II*") are instructive on this point. In *Steinley I*, the Court concluded that Plaintiffs improperly grouped together five defendants "without alleging facts that explain their individual roles or why they should be jointly liable." 2018 WL 6985318, at *5. After Plaintiffs filed a second amended complaint, the Court held that "the allegations added to the SAC adequately cure[d] this flaw." 2019 WL 3059383, at *4. Specifically, the Court reasoned that "the SAC provides a description for why *each* Defendant is liable for the alleged wrongdoing." *Id.* (emphasis added). Here, however, Plaintiffs' allegations fail to provide CooperCompanies with adequate notice as to what it allegedly did or how its conduct—as opposed to the conduct of CooperSurgical—gives rise to liability.

The crux of Plaintiffs' argument in opposition is that "it can be reasonably inferred, given the relationship between the two related corporate entities, that Plaintiffs' allegations are directed at *both* Cooper Companies and CooperSurgical." ECF No. 46 at 7 (emphasis in original). Plaintiffs' complaint does explicitly state that CooperSurgical is "a wholly owned subsidiary" of CooperCompanies. ECF No. 1 ¶ 14. However, even considering the parent-subsidiary relationship between CooperCompanies and CooperSurgical, the complaint is devoid of

7

allegations explaining that the two entities "worked closely together," acted in concert, or should be considered jointly liable for the allegedly defective product. *Steinley II,* 2019 WL 3059383, at *4. It bears emphasis that Plaintiffs' complaint references CooperCompanies on just two occasions, while the remainder of the allegations explain the allegedly wrongful conduct of CooperSurgical. *See* ECF No. 1 ¶¶ 41, 44. Plaintiffs' threadbare assertion that CooperCompanies "[o]perat[es] through CooperSurgical" does not pass muster under Rule 8. ECF No. 1 ¶ 44.

The Court concludes that CooperCompanies is not properly joined as a Defendant, and thus, venue is not proper in this District. *See* 28 U.S.C. § 1391(b). As CooperCompanies notes, it "has never disputed personal jurisdiction or venue, as long as it is properly joined in compliance with Rule 8(a)(2)." ECF No. 41 at 5. Because the Court believes that the deficiencies in Plaintiffs' complaint can be cured, it will grant Defendants' motion to dismiss claims against CooperSurgical with leave to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (holding that dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment").

### B. The Court Does Not Have Jurisdiction Over CooperSurgical

Next, the Court addresses whether it has jurisdiction over CooperSurgical. It is well-established that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U S. at 919. Although the parties largely agree that the "paradigm basis" for general jurisdiction—namely, a corporation's place of business and incorporation—are not present here, *see* ECF Nos. 39 at 12–13, 42 at 8, Plaintiffs contend that the Court has general jurisdiction because this is an "exceptional case." *Martinez*, 764 F.3d at 1070 (quoting *Daimler AG*, 571 U.S. at 139 n.19).

To support this argument, Plaintiffs point to the following circumstances:

- Every member of CooperSurgical's leadership team works out of California, not Connecticut.
- CooperSurgical has offices in California, including in Los Altos and Los Angeles.

8

- CooperSurgical's registration with the Connecticut Secretary of State does not provide a Connecticut mailing address. Rather, it lists "a San Ramon, California mailing address."
- CooperSurgical is registered with the California Secretary of State, has an agent for service of process in California, and pays California state taxes.
- "A substantial number of individuals" are patients of fertility clinics located in California and their "eggs and/or embryos were exposed to the Recalled Media and damaged or destroyed as a result of that exposure."
- CooperSurgical conducts research, development and distribution, and administrative activities in facilities in California.

ECF No. 39 at 13–14; ECF No. 39-1 at 2–4. CooperSurgical's response is two-fold. First, it avers that Plaintiffs now include "new, unpled [allegations] appearing nowhere in the Complaint." ECF No. 42 at 9. And second, it asserts that in any event, Plaintiffs' new facts are "hardly 'exceptional,' because they do not distinguish California from countless other locales where CooperSurgical carries on business activities." *Id.* at 10.

As an initial matter, CooperSurgical is correct that "Plaintiff may not use his opposition to raise and argue new allegations or claims not in the complaint. *Minor v. Fedex Off. & Print Servs., Inc.*, 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016). "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) (emphasis in original). Even were the Court to consider the new alleged facts, however, it would find that Plaintiffs fall short of demonstrating that this is an "exceptional case." *Martinez*, 764 F.3d at 1070 (quoting *Daimler AG*, 571 U.S. at 139 n.19). The bar for "exceptional circumstances" is high. *Goodyear*, 564 U.S. at 927–28. In *Martinez*, for example, the Ninth Circuit declined to find general jurisdiction where the defendant's contacts with California included contracts with California companies worth between $225 and $450 million; attendance at industry conferences; and promotion of products in California. 764 F.3d at 1070; *see also Dormoy v. HireRight, LLC*, 23-cv-02511-EMC, 2023 WL

9

5110942, at *5–6 (N.D. Cal. Aug. 9, 2023) (finding no general jurisdiction over the defendant when it had temporary headquarters and employment in California, given that defendant operated in a variety of states, with offices and executives spread across the nation). That CooperSurgical conducts some business in California, lists a California mailing address, and even has some employees that reside in the state does not render its contacts "so substantial and of such a nature" as to justify the corporation being subject to general jurisdiction in the state. *Daimler AG*, 571 U.S. at 127 (internal quotation marks and citation omitted).[3]

The Court concludes that it does not have general jurisdiction over CooperSurgical. Because Plaintiffs concede they do not currently meet the requirements for specific jurisdiction, *see* ECF No. 39 at 12–13, the Court next turns to the question of jurisdictional discovery.[4]

### C. Jurisdictional Discovery

A district court is vested with broad discretion to permit or deny jurisdictional discovery. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "[D]iscovery should be granted when . . . the jurisdictional facts are contested or more facts are needed." *Laub*, 342 F.3d at 1093; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (jurisdictional discovery may be appropriate "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.").

In this district, courts have held that "a plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery." *Calix Networks, Inc. v. Wi–Lan, Inc.*, No. C–09–06038–CRB (DMR), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) (citing *eMag Solutions, LLC v. Toda Kogyo Corp.*, No. C 02–1611 PJH, 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006)) ("It would . . . be counterintuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that would be required to defeat a motion to

---

[3] Plaintiffs also cite no authority for the proposition that paying taxes in a state confers general jurisdiction.
[4] Plaintiffs briefly argue that "[s]hould the Court find that Plaintiffs have established personal jurisdiction over CooperSurgical, 'it follows that venue [in the Northern District of California] is also proper.'" ECF No. 39 at 20 (quoting *Salesforce.com, Inc. v. GEA, Inc*., 462 F. Supp. 3d 1004, 1009 (N.D. Cal. 2020)). While Plaintiffs are likely correct, the Court declines to reach the issue of venue because it concludes that it does not have personal jurisdiction over CooperSurgical.

10

dismiss."). A plaintiff must merely present "a 'colorable basis' for jurisdiction, or 'some evidence' constituting a lesser showing than a prima facie case." *Id*. (citations omitted). However, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citations omitted). "[L]imited discovery should not be permitted to conduct a fishing expedition." *Johnson v. Mitchell*, No. CIV S–10–1968 GEB, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012) (internal quotation marks and citations omitted).

Plaintiffs contend that jurisdictional discovery can establish general jurisdiction under an alter ego theory, traditional specific jurisdiction, and specific jurisdiction under an agency theory. ECF No. 39 at 16. Although Plaintiffs' allegations standing alone are not enough to establish a prima facie case that CooperSurgical is acting as CooperCompanies' alter ego, the Court concludes that Plaintiffs have made a "colorable" showing of jurisdiction and that they are entitled to jurisdictional discovery. *See Calix Networks, Inc.*, 2010 WL 3515759, at *4.

Plaintiffs allege that CooperCompanies "[o]perat[es] through CooperSurgical" to be "a prominent leader in the global infertility treatment market." ECF No. 1 ¶ 44. In support of this assertion, Plaintiffs aver that CooperCompanies employs and controls CooperSurgical's top executive, President Holly Sheffield, ECF No. 39-4 at 2, and that "three of the four principals listed in CooperSurgical's 2024 report with the Connecticut Secretary of State are employed in California with Cooper Companies (the fourth is Ms. Sheffield)," ECF No. 39 at 17. Further, Plaintiffs aver that "the same San Ramon, California mailing address" is used for both companies, *id.*, and that "both Cooper Companies and CooperSurgical are named as released parties in the recalled culture media settlement agreement that Defendants are pushing patients to sign." *Id.* Additionally, CooperCompanies' Fiscal Year Form 10-K states that CooperCompanies "operates through two business segments, CooperVision and CooperSurgical" and its "principal facilities" include 200,000 square feet in California, with operations including "Executive offices; . . . CooperSurgical research & development, distribution and administrative offices." ECF No. 39-3 at 8, 41. Viewed in the aggregate, "[t]he declaration and exhibits filled [sic] in support of

11

1      [Plaintiffs'] Opposition demonstrate a close relationship between the Defendants." *Riot Games,*

2      *Inc. v. Suga PTE, Ltd.*, 638 F. Supp. 3d 1102, 1121 (C.D. Cal. 2022).

3            To be sure, "that the corporations share officers and offices is not sufficient to demonstrate

4      that [the subsidiary corporation] is [the parent corporation's] alter ego." *Delacruz v. Serv. Corp.*

5      *Int'l*, No.18-cv-00154-LJO-EPG, 2018 WL 2287962, at *5 (E.D. Cal. May 18, 2018); *see Harris*

6      *Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) ("that the

7      two companies share the same offices . . . and some of the same staff . . . do not necessarily render

8      [the subsidiary] the alter ego or agent of [the parent corporation].); *Payoda, Inc. v. Photon*

9      *Infotech, Inc.*, No. 14–cv–04103–BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015)

10    (determining that sharing "common leadership and office space is, by itself, insufficient to satisfy

11    the unity of interest prong"). However, "the threshold for granting jurisdictional discovery is

12    low." *Delacruz*, 2018 WL 2287962 at *8. "While these discrepancies may well not be an

13    indication that corporate formalities between [CooperCompanies and CooperSurgical] are not

14    properly observed, it does point to issues regarding [CooperCompanies'] involvement in the

15    operations of [CooperSurgical] that could be clarified in discovery." *Id.*; *see also Authentic*

16    *Alaska v. Assemblers, Inc.*, No. 17-cv-05675-RS, 2018 WL 3069300, at *4 (N.D. Cal. Jan. 3,

17    2018) (granting jurisdictional discovery where plaintiff made a "'colorable' showing" that it may

18    be able to demonstrate that AFP is Assemblers' alter ego "with the benefit of some discovery");

19    *Riot Games, Inc.*, 638 F. Supp. 3d at 1121 (noting that "the record suggests that Defendants share

20    employees and ownership and that Imba Tech is either a subsidiary or division of Suga" and that

21    "the Court believes further discovery on this issue may demonstrate facts sufficient to constitute a

22    basis for jurisdiction").

23          Thus, the Court concludes that jurisdictional discovery is warranted over CooperSurgical.

24    Discovery will be referred to a Magistrate Judge.

## CONCLUSION

26          The Court grants CooperCompanies' motion to dismiss on Rule 8 grounds. The Court

27    grants CooperSurgical's motion to dismiss on jurisdictional grounds. Leave to amend is granted.

28    CooperSurgical may renew its challenge to personal jurisdiction after jurisdictional discovery is

complete.

The Court sets a case management conference on January 15, 2025, at 2:00 p.m. An updated joint case management statement is due January 8, 2025. In their joint statement, the parties shall propose deadlines for the filing of an amended complaint and Defendants' motions to dismiss, if the Court has not already set such deadlines.

The parties may file a stipulated request to advance or continue the January 2025 case management conference should circumstances warrant. A request to advance or continue should be made as a separate stipulation or motion and not merely included in a case management statement.

**IT IS SO ORDERED.**

Dated:  September 9, 2024

_____
JON S. TIGAR
United States District Judge